**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL ELBERTS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No.: |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| ELDORADO RESORTS, INC., THOMAS ROBERT REEG, and BRET YUNKER, | |
| Defendants. | <u>JURY TRIAL DEMANDED</u> |

Plaintiff Paul Elberts, individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange

Commission ("SEC") filings by Eldorado Resorts Inc. ("Eldorado" or the "Company"), as well as media and reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all persons and entities, other than Defendants, who purchased the securities of Eldorado during the period of March 1, 2019 through September 2, 2019, inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws (the "Class").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78b-1 and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

3.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as the Company conducts

business in this District and a substantial part of the conduct complained of herein occurred in this District.

5.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Eldorado securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant Eldorado operates as a gaming and hospitality company in the United States. Eldorado is incorporated in Nevada and its headquarters are located at 100 West Liberty Street, Suite 1150, Reno, NV 89501. During the Class Period, Eldorado's securities was actively traded on New York Stock Exchange ("NYSE"), under the ticker "ERI."

8.     Defendant Thomas Robert Reeg ("Reeg") has served as the Company's Chief Executive Officer ("CEO") since January 2019.  Prior to that, he served as the

Company's President and Chief Financial Officer ("CFO") from March 2016 until January 2019, and Interim CFO from January 2019 until February 2019.

9.     Defendant Bret Yunker ("Yunker") has served as the Company's CFO since February 2019.

10.    Collectively, Defendants Reeg and Yunker are collectively the "Individual Defendants."

11.    Collectively, Defendant Eldorado and Individual Defendants are herein referred to as "Defendants."

12.    Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

- 4 -

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

13.     Eldorado is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

14.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Eldorado under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Defendants' False and Misleading Class Period Statements

15.     On March 1, 2019, the Company filed its annual report on Form 10-K with the SEC for the year ending December 31, 2018 (the "2017 10-K"). The 2018 10-K was signed by Defendant Reeg. Attached to the 2018 10-K were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendant Reeg attesting that the 2018 10-K "fairly represents, in all material respects, the financial condition and results of operations of the Company."

16.     The 2018 10-K stated, in part:

*We have adopted a code of ethics and business conduct applicable to all directors and employees, including the Chief Executive Officer, Chief Financial Officer and Principal Accounting Officer*. The code of ethics and business conduct is posted on our website, http://www.eldoradoresorts.com (accessible through the "Corporate Governance" caption of the Investor Relations page) and a printed copy will be delivered on request by writing to the Corporate Secretary at Eldorado Resorts, Inc., c/o Corporate Secretary, 100 West Liberty Street, Suite 1150, Reno, NV 89501. We intend to satisfy the disclosure requirement regarding certain amendments to, or waivers from, provisions of its code of ethics and business conduct by posting such information on our website.

(Emphasis added.)

17.     Eldorado's Code of Ethics and Business Conduct states, in part:

*It is the Company's policy to comply with all applicable laws, rules, and regulations. Some laws carry criminal penalties. It is the personal responsibility of each director, officer, employee and consultant to adhere to the standards and restrictions imposed by those laws, rules, and regulations. The Company expects each director, officer, employee and consultant to refrain from any illegal, dishonest, or unethical conduct.*

Generally, it is both illegal and against Company policy for any director, officer, employee and consultant who is aware of material nonpublic information relating to the Company, any of the Company's customers or any other private or governmental issuer of securities to buy or sell any securities of those issuers, or recommend that another buy, sell or hold the securities of those issuers. It is the Company's policy for all directors, officers, employees and consultants to comply with the Company's Securities Trading Policy. Any director, officer, employee or consultant with questions regarding these types of transactions should contact the Compliance Officer.

*       *       *

- 6 -

***All who are subject to the Code are responsible for complying with it and for reporting any known or suspected violations of it.*** The Company recognizes that such a mandate may not be meaningful without an accompanying provision for accountability and discipline of violations of the Code.

Subject to the terms of the Code, reported violations of the Code will be investigated, addressed promptly and treated confidentially to the extent possible. The Company will strive to impose discipline for each Code violation that fits the nature and particular facts of the violation. The Company uses a system of progressive discipline and generally will issue warnings or letters of reprimand for less significant, first-time violations.

Violations of a more serious nature may result in termination of employment or suspension without pay, demotion, loss or reduction of bonus or option awards, or any combination of such disciplinary measures. Violations of the Code that go unaddressed are treated by the SEC as implicit waivers of the Code. Accordingly, any violation that is discovered and not addressed will have to be disclosed in accordance with the rules and regulations of the SEC or applicable listing standards. In such cases, the SEC's rules will require disclosure of the nature of any violation, the date of the violation and the name of the person who committed the violation. Such disclosure would be harmful to the Company and the individuals involved in the violation.

(Emphasis added.)

18.     On May 7, 2019, the Company filed its quarterly report on Form 10-Q with the SEC for the quarter ending March 31, 2019 (the "1Q 2019 10-Q"). The 1Q 2019 10-Q was signed by Defendants Reeg and Yunker. Attached to the 1Q 2019 10-Q were SOX certifications signed by Defendants Reeg and Yunker attesting that the 1Q 2019 10-Q "fairly represents, in all material respects, the financial condition and results of operations of the Company."

19.     On August 9, 2019, the Company filed its quarterly report on Form 10-Q with the SEC for the quarter ending June 30, 2019 (the "2Q 2019 10-Q"). The 2Q 2019 10-Q was signed by Defendants Reeg and Yunker. Attached to the 2Q 2019 20-Q were SOX certifications signed by Defendants Reeg and Yunker attesting that the 2Q 2019 10-Q "fairly represents, in all material respects, the financial condition and results of operations of the Company."

20.     The statements referenced in ¶¶15-19 above were materially false and/or misleading because they misinterpreted and failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) several of the Company's executive officers, including Defendant Reeg, engaged in improper trading with respect to the securities of another publicly-traded company; and (2) as a result, Defendants' statements about the Eldorado's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Begins to Emerge

21.     On September 3, 2019, Eldorado Resorts filed a Form S-4 with the SEC in connection with the proposed merger between the Company and Casers

Entertainment Corporation (the "2019 S-4"). In the 2019 S-4, the Company disclosed that several of its officers received a subpoena from the SEC in May 2019 relating to an investigation of trading in securities of another publicly traded company. Defendant Reeg, Gary Carano, the Company's former CEO and current Executive Chairman, Anthony Carano, the Company's President and Chief Operating Officer, and James Hawkins, a member of the Eldorado board, each received a subpoena. The 2019 S-4 stated, in pertinent part:

> Between June 8, 2019 and June 24, 2019, representatives of Skadden and Milbank exchanged multiple drafts of a merger agreement. During that time period, in the course of negotiations, ERI agreed that it would pay Caesars a reverse termination fee of $836.8 million in the event that the merger agreement was terminated for failure to obtain one or more required regulatory approvals or if ERI was in material and willful breach of its regulatory efforts obligations with respect to antitrust laws. ***Also during that same period, the parties continued their due diligence efforts. In the course of Caesars' reverse due diligence of ERI, representatives of ERI informed representatives of Caesars that Mr. Reeg, Gary Carano, Anthony Carano, the President and Chief Operating Officer of ERI, and James Hawkins, a member of the ERI Board, each had received a subpoena from the SEC in May 2019 relating to its ongoing investigation of trading in the securities of another publicly-traded company, the stock of which the ERI executives had traded and for which Mr. Hawkins had served as a member of the board of directors.*** The representatives of ERI further informed representatives of Caesars that ERI understood that the executives had not been notified of any allegation of wrongdoing. ERI responded to inquiries by Caesars regarding the matter, and ERI and Caesars agreed to (i) change the composition of the members of the ERI Board at the closing of the Merger in the event that Mr. Reeg was no longer serving as a member of the ERI Board at the closing of the

Merger as a result of circumstances specified in the Merger Agreement and (ii) change the composition and number of the members of the ERI Board at the closing of the Merger in the event that Mr. Reeg and Mr. Gary Carano were no longer serving as members of the ERI Board at the closing of the Merger as a result of circumstances specified in the Merger Agreement.

22.     It was subsequently revealed by the *New York Post* that the undisclosed company mentioned in the 2019 S-4 was IRadimed Corp., which employed James Hawkins as a director.

23.     On this news, shares of Eldorado fell by $3.09, or 8%, to close at $35.42 on September 3, 2019, injuring investors.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Eldorado securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

25.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Eldorado securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Eldorado or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

28.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.      whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Eldorado;

c.      whether the Individual Defendants caused Eldorado to issue false and misleading financial statements during the Class Period;

d.      whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

e.      whether the prices of Eldorado securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

f.      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

29.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it

impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

30. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b. the omissions and misrepresentations were material;

c. Eldorado securities are traded in an efficient market;

d. the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

e. the Company traded on the NYSE;

f. the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

g. Plaintiff and members of the Class purchased, acquired and/or sold Eldorado securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

31.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

32.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## FIRST CAUSE OF ACTION

### Violation of Section 10(b) of The Exchange Act Against and Rule 10b-5 Promulgated Thereunder Against All Defendants

33.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

34.     This cause of action is asserted against all Defendants.

35.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell Eldorado's securities at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

- 14 -

36.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Eldorado as specified herein.

37.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Eldorado's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Eldorado and its business operations and financial condition in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers Eldorado securities during the Class Period.

38.     Each of the Defendants' primary liability, and controlling person liability, arises from the following: (a) Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the

Company's management team or had control thereof; (b) by virtue of their responsibilities and activities as senior officers and/or directors of the Company, were privy to and participated in the creation, development and reporting of the Company's  plans, projections and/or reports; (c) Defendants enjoyed significant personal contact and familiarity with the other members of the Company's management team, internal reports and other data and information about the Company's, operations, and (d) Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

39.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Eldorado's financial condition from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' false and misleading statements during the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in

failing to obtain such knowledge by failing to take steps necessary to discover whether those statements were false or misleading.

40.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for Eldorado's securities was artificially inflated during the Class Period.

41.    In ignorance of the fact that market prices of Eldorado's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Eldorado's securities during the Class Period at artificially high prices and were damaged thereby.

42.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Eldorado's financial results and condition, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Eldorado securities, or, if they had acquired such

- 17 -

securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

43.    By virtue of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

44.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

45.    This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CAUSE OF ACTION

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

46.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.    This second cause of action is asserted against each of the Individual Defendants.

48.    The Individual Defendants acted as controlling persons of Eldorado within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue

of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

49.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

50.     As set forth above, Eldorado and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

- 19 -

51.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

52.     This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a.     Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

b.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.     Awarding Plaintiff and the Class their reasonable costs and expenses

incurred in this action, including counsel fees and expert fees; and

      d.     Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 23, 2019        Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/Laurence M. Rosen
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff